# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re                                                      Case No. 06-80058-WRS
                                                           Chapter 13
RAYMOND VINNIE,

    Debtor.

## MEMORANDUM DECISION

This Chapter 13 case came before the Court for hearing on May 10, 2006, upon the objection to confirmation of the Debtor's Chapter 13 Plan, which was filed by the Alabama Department of Human Resources. (DHR). (Doc. 12). The Debtor was represented by counsel Cecil Kerry Curtis and DHR was represented by counsel Richard G. Moxley. DHR has filed a brief (Doc. 14), while the Debtor has not. For the reasons set forth below, the objection is OVERRULED and the Chapter 13 Plan is CONFIRMED AS FILED.

## I. FACTS

The Debtor filed a petition in bankruptcy pursuant to Chapter 13 of the Bankruptcy Code on February 7, 2006 and filed a Chapter 13 Plan with his petition. (Doc. 4). The Plan calls for the Debtor to make payments to the Trustee in the amount of $105.00 per week for five years. DHR has filed three claims in this case, one for each of three women who have children by the Debtor. The DHR claims total $14,631.84. DHR claims that it is entitled to priority pursuant to 11 U.S.C. § 507(a)(1)(A) and neither the amount of the claim or its priority status is in dispute

here.[1]  The Debtor's Plan proposes to pay the claims of DHR in full, over the life of the Plan, concurrently with other claims, including the claim of the Debtor's attorney.  It is not disputed here that the Debtor's attorney is entitled to priority pursuant to 11 U.S.C. § 507(a)(2).  See also, 11 U.S.C. §§ 330(a)(4)(B), 503(b)(2).

## II.  CONCLUSIONS OF LAW

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

DHR contends that its claims should be paid in full, before any other claim is paid anything, including the claim of the Debtor's attorney for his fees.  DHR reasons that because its claims have a higher priority than any other claims filed in this case, it should be paid first.  In other words, DHR is of the view that all of the Chapter 13 Plan payments should be devoted to payment of the claim of DHR until it is satisfied.  For purposes of brevity, the Court will refer to the practice of paying claims in the order of their priority in full before claims with a lower priority are paid as "sequential payment."  In contrast, payment of claims of various priorities and secured claims simultaneously will be referred to as "concurrent payments."

---

[1] The Debtor filed his Chapter 13 Plan on a form prescribed by this Court.  The form contains a space for "PRIORITY CLAIMS (11 U.S.C. § 507(a)(2) to (8))."  The Court's Form Chapter 13 Plan does not contain a separate space for claims filed pursuant to § 507(a)(1)(A) or (B).  In light of the amendments to the Bankruptcy Code made in 2005 pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, (BAPCPA) the Court will need to amend its Form Chapter 13 Plan.  In spite of this difficulty, it is apparent that it is the intention of the Debtor and the Court that the claim of DHR is to be paid in full over the life of the plan, in accordance with 11 U.S.C. § 1322(a)(2).  DHR does not contend otherwise.

Case 06-80058    Doc 15    Filed 06/23/06    Entered 06/23/06 16:33:26    Desc Main
                              Document      Page 2 of 13

The Court will examine several provisions of the Bankruptcy Code here. First, it will examine the provisions creating priority. Second, it will then examine those sections dealing with distributions made under Chapter 13 Plans. Third, it will examine the distribution scheme in cases under Chapter 7. Fourth, the Court will examine decisions handed down by other courts which are pertinent here.

### A. Rules of Priority

God may have created all men equal, but the Bankruptcy Code does not treat all claims equally. In general terms, this process of treating some claims more favorably than others is referred to as priority. When we consider questions of priority, we should first attempt to understand what it is that gives one claim priority over another. Second, once we have defined which claims are entitled to priority, we should next consider what this means in the context of how a claim is treated for purposes of distribution.

Section 507 of the Bankruptcy Code provides, in part, as follows:

> (a) The following expenses and claims have priority in the following order:
>
> (1) First:
>
> (A) Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian or responsible relative, without regard to whether the clam is filed by such person or is filed by a governmental unit on behalf of such

> person, on the condition that funds received under this paragraph
> by a governmental unit under this title after the date of the filing of
> the petition shall be applied and distributed in accordance with
> applicable nonbankruptcy law.

> \* \* \*

> (2) Second, administrative expenses allowed under section 503(b)
> of this title.

Examination of these provisions shows that the claim of DHR is entitled to priority pursuant to § 507(a)(1)(A) and the expenses for the Debtor's attorney are entitled to priority under Section 507(a)(2). Examination of Section 507 reveals that the Code structures priority claims in a hierarchical manner. In other words, claims entitled to priority pursuant to 507(a)(1) are higher than those under 507(a)(2). Therefore, the argument of DHR, to the effect that its claim has a higher priority than the claim of the Debtor's lawyer is correct, as far as it goes.

### B. Chapter 13 Rules of Distribution

Having determined that the claim of DHR is entitled to priority pursuant to § 507(a)(1) and the Debtor's lawyer is entitled to priority pursuant to § 507(a)(2), we must next determine what this means in terms of distribution under the Debtor's Chapter 13 Plan.

Section 1322 of the Bankruptcy Code provides, in part, as follows:

> (a) The plan shall–

> \* \* \*

Case 06-80058    Doc 15    Filed 06/23/06    Entered 06/23/06 16:33:26    Desc Main
Document      Page 4 of 13

> (2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title . . .

* * *

> (b) Subject to subsections (a) and (c) of this section, the plan may–

* * *

> (4) provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim.

In general terms, § 1322(a) provides what must be in a plan and § 1322(b) states what a Debtor may do with his Plan. That is, the provisions of § 1322(a) are mandatory, while the provisions of § 1322(b) are permissive. Section 1322(a)(2) provides that priority claims, as defined in Section 507, must be paid in full, in deferred cash payments. Two things are apparent when reading Section 1322(a)(2). First, all of the subsections in Section 507 are treated alike. While § 507(a)(1) comes before 507(a)(2), § 1322(a)(2) treats them the same. "All" 507 priority claims must be paid in full over the life of the plan in deferred cash payments. There is nothing in the text of § 1322(a) which suggests that § 507(a)(1) claims must be paid in full before § 507(a)(2) claims are paid anything. Second, § 1322 contemplates that payments on priority claims will be made over the life of the plan. In other words, the statute contemplates the concurrent rather than sequential payment of secured claims.

Looking next at the permissive provisions of § 1322(b), we find further evidence of Congressional intent which undermines the argument of DHR. "The plan may . . . provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim," This language further demonstrates that Congress contemplated

that claims could be paid concurrently, rather than in sequence as urged by DHR. To be sure, § 1322(b)(4) speaks in terms of both secured and unsecured claims and does not use the further qualifying term "priority." However, if one looks at the Proof of Claim form, it is readily apparent that claims are divided into two primary types: secured and unsecured. See, 11 U.S.C. § 506. Unsecured claims may be further subdivided into unsecured claims with priority and unsecured claims without priority. See, Official Form 10, see also, 11 U.S.C. § 507. When Congress spoke of both secured and unsecured claims, it intended to include the entire universe of claims. That Congress did not further reference unsecured claims with priority and those without priority in § 1322(b)(4) does not mean that it intended to carve out unsecured claims entitled to priority for more favorable treatment.

The argument of DHR is contrary to the plain language of § 1326(b)(1),[2] which provides as follows:

> (b) Before or at the time of each payment to creditors under the plan, there shall be paid–
>
>   (1) any unpaid claim of the kind specified in section 507(a)(2) of this title.

---

[2] This section was amended in 2005 by BAPCPA. Prior to the BAPCPA amendment, § 1326(b)(1) provided protection for claims which were entitled to priority pursuant to § 507(a)(1). The 2005 Amendments changed the reference to § 507(a)(2). It appears that Congress was well aware that when it gave child support claims priority pursuant to § 507(a)(1)(A) and (B), it nevertheless wanted to protect the payment of attorney's fees in cases under Chapter 13. Were it otherwise, that is if the argument DHR advances here were to prevail, debtors with large child support arrearages would most likely be denied access to the Bankruptcy Courts because their lawyers could not be paid until late in the case.

Case 06-80058   Doc 15   Filed 06/23/06   Entered 06/23/06 16:33:26   Desc Main
Document      Page 6 of 13

Therefore, § 1326(b)(1) bars the relief requested by DHR. At a minimum, § 1326(b)(1) requires that the debtor's attorney be paid contemporaneously with other creditors. Indeed, one may reasonably argue that § 1326(b)(1) would allow the attorney to be paid ahead of DHR, notwithstanding the fact that it would have a higher priority in distribution in a case under Chapter 7.

### C. Distribution in Cases under Chapter 7

While this is a case under Chapter 13, the Court will examine how cases under Chapter 7 are administered for purposes of comparison, in an effort to gain some perspective of the question posed by the objection of DHR here. One should bear in mind that cases under Chapter 7 (which was formerly referred to as "straight bankruptcy") are administered quite differently than cases under Chapter 13. In cases under Chapter 7, a trustee is appointed who liquidates (converts to cash) property of the estate. Once the property is liquidated a single distribution to creditors is made. Distribution in cases under Chapter 7 is governed by the provisions of 11 U.S.C. § 726, which provides, in part, as follows:[3]

> (a) Except as provided in section 510 of this title, property of the estate shall be distributed–

---

[3] The full text of § 726 is more complicated than this. However, this abridged version of § 726 is sufficient to demonstrate the basic scheme of distribution in cases under Chapter 7. Resort to the full text of § 726 will not change the analysis here.

-7-

> (1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title . . .
>
> (2) second, in payment of any allowed unsecured claim . . .

Examination of the text of § 726 shows two things. First, unsecured priority claims are paid ahead of unsecured claims which do not have priority. Second, priority claims are paid "in the order specified in section 507." That is § 507(a)(1) claims are paid ahead of § 507(a)(2) claims, and so on. Because only a single distribution is made in cases under Chapter 7, as opposed to plan payments made over a period of time in cases under Chapter 13, the highest priority claim is paid first. If there are sufficient funds in the estate, the next highest priority claim is paid, and so on, until unsecured claims without priority are paid. If, as is usually the case, the funds in the estate are not sufficient to pay all claims in full, the last class to receive payment is paid pro rata. It appears that DHR has confused the notion of priority, in the context of a case under Chapter 7, with priority in the context of a case under Chapter 13. The argument DHR makes here would be valid, if it was made in the context of a Chapter 7 case. The chief flaw in the argument of DHR is that it fails to distinguish cases under Chapter 13 from cases under Chapter 7.

### D. Case law

All of the reported case law is against the position of DHR.. In a case handed down two months ago, the Bankruptcy Court in the Northern District of Alabama overruled an objection to confirmation of a Chapter 13 Plan filed by DHR which is made on grounds which are identical to its objection here. In re: Sanders, 341 B.R. 47 (Bankr. N.D. Ala. 2006). The Court in Sanders

concluded, as does the Court here, that the contention of DHR is contrary to the Bankruptcy Code. This Court is of the view that Sanders was correctly decided.

DHR argues, at page 13 of its brief, that the decision of the Northern District of Alabama in Sanders is contrary to a decision handed down in the Southern District of Alabama in In re: Abrams, 305 B.R. 920 (Bankr. S.D. Ala. 2002). In Abrams, a Chapter 13 Plan proposed to pay $7,500 on a secured claim. Seven months after confirmation of the Chapter 13 Plan, the secured creditor took action, contending, among other things, that it was entitled to postpetition interest on its secured claim. The Court in Abrams denied the secured creditor's motion finding that it was bound by the confirmed plan and that its actions had come too late. This Court is of the view that Abrams is good law, and further that it has absolutely nothing to do with the issues here. The argument of DHR, that its position in this case is supported by Abrams, lacks merit.

In an unpublished decision handed down by this Court in April of this year, this Court rejected the contention of DHR, that its priority claim must be paid in full before secured claims are paid. In re: Boler, Case No. 06-30049, in the United States Bankruptcy Court for the Middle District of Alabama, (Decision entered April 28, 2006)(Williams, J.). The holding in Boler is consistent with the Court's ruling here in that in both instances, the Court permitted the concurrent payment of priority claims with other claims, in Boler secured claims, in accordance with § 1322(b)(4).

In a decision handed by the Bankruptcy Court in the Southern District of Alabama decided before the BAPCPA amendments, that Court rejected a contention of DHR that the Bankruptcy Code required that its claim (at that time entitled to priority pursuant to § 507(a)(7)) should be paid ahead of the claim of the Internal Revenue Service (whose claim was then entitled

-9-

to priority pursuant to § 507(a)(8)). In re: Aldridge, 335 B.R. 889 (Bankr. S.D. Ala. 2005). While Aldridge was decided under the Bankruptcy Code as it stood prior to the BAPCPA amendments, and the priority scheme has changed; the underlying principle permitting concurrent payments of priority claims with claims of a lower priority, or no priority at all, as provided by § 1322(b)(4) remains unchanged.

DHR argues that Judge Mahoney ruled in their favor in Adridge in support of their objection here. (Doc. 14, p. 12). Careful analysis of the decision in Aldridge shows that while the Court ruled in favor of DHR on very narrow, technical grounds, the Court rejected the broad contention, to the effect that higher priority claims must necessarily be paid in full and ahead of lower priority claims.

Judge Mahoney quite clearly rejected DHR's contention arguing for sequential payment of claims in Aldridge, where the Court stated that:

> In a chapter 7 case, seventh priority claims must be paid in full before eighth priority clams. However, there is no provision in the Code requiring that priority payments in chapter 13 cases be made in the order set forth in § 507. Section 1326, Chapter 13's sister provision to § 726, requires only that the trustee's fee and any unpaid priority claim of the kind specified in § 507(a)(1) must be paid "before or at the time of each payment to creditors under the plan." 11 U.S.C. § 1326(b)(1). Section 1326 does not set forth any order of payment for the other priority claims. 335 B.R. 889, 893 (citations omitted).

In Aldridge, the Court further stated that:

> The order confirming Aldridge's plan (and virtually every other chapter 13 plan confirmed in this district) stated that the trustee was to make disbursements on "any claim entitled to priority

-10-

> pursuant to and in the order set forth in 11 U.S.C. § 507," unless
> the priority was expressly waived. The parties agree that DHR has
> not waived its priority in this case. Likewise there is no question
> the trustee is to make disbursement on all claims entitled to priority
> pursuant to § 507. The question is whether the confirmation order
> requiring the chapter 13 trustee to make plan payments in the order
> set forth in § 507 requires the trustee to pay § 507(a)(7) claims in
> full before disbursing any money on § 507(a)(8) claims. The Court
> finds that it does. Once a chapter 13 plan is confirmed, the
> language of the plan controls, as long as the plan is unambiguous.
> 335 B.R. 889, 893.

These passages from <u>Aldridge</u> show that DHR prevailed in that case not because its position has any merit under the Code as then written, but rather because it was required under the language of the confirmed Chapter 13 Plan. Indeed, the Court in <u>Aldridge</u> quite clearly rejected the sequential payment argument of DHR.

### III. CONCLUSION

DHR contends that the Debtor's Plan should not be confirmed because it does not provide that the priority claim of DHR should be paid in full before any other claims, including the claim of the Debtor's attorney, are paid anything. As discussed above, the position of DHR is not supported by the Bankruptcy Code. Moreover, this Court agrees with the decision handed down by the Northern District of Alabama in <u>Sanders</u>, which is on all fours with this case. The "sequential payment" argument made here by DHR is rejected as it is contrary to the Bankruptcy Code. This Court will, by way of a separate order, overrule the objection to confirmation filed by DHR.

-11-

Done this 23rd day of June, 2006.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Debtor
   Cecil Kerry Curtis, Attorney for Debtor
   Richard G. Moxley III, Attorney for DHR
   Curtis C. Reding, Trustee

-12-